154

717 P.2d 458

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Joseph K. BOGART and Donna M. Bogart, his wife; the Hertz Corporation, a Delaware corporation; Employers Insurance of Wausau, a mutual company; John J. May and Margaret May, his wife, Defendants-Appellees.**

**No. 1 CA–CIV 6554.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 17, 1985.

Hofmann, Salcito, Stevens & Myers, P.A. by Leroy W. Hofmann, Phoenix, for plaintiff-appellant.

Browder & Kenney, P.C. by Robert W. Browder, Phoenix, for defendants-appellees, Employers Ins.

Leonard & Clancy, P.C. by Kenneth P. Clancy, Phoenix, for defendant-appellee Bogart.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Noreen L. Sharp, Phoenix, for defendant-appellee Hertz Corp.

OPINION

BROOKS, Presiding Judge.

The issue presented on appeal is whether the trial court erred by granting summary judgment in favor of the appellees. The facts are undisputed.

On the date of the automobile accident which triggered this litigation, John May was employed by Xerox as a branch manufacturing consultant. This job required a good deal of travel. On the day in question, May arrived by air in Phoenix and rented an automobile from Hertz Corporation in accordance with instructions from Xerox. Xerox was to reimburse him for the cost of the rental. After various events not relevant to our analysis, May was involved in an automobile accident with resulted in injuries to Joseph K. and Donna M. Bogart, husband and wife.

Hertz was a self-insurer, having filed the proper documents with the Division of Motor Vehicles of the Arizona Highway Department. Appellee Employers Insurance of Wausau (Wausau) insured Xerox to cover its employees who rented automobiles in

the course of their employment. May carried a personal liability policy on his 1968 Volkswagen, issued by appellant State Farm Mutual Automobile Insurance Company (State Farm).

The Bogarts originally sued May and Hertz provided his defense. Before trial, however, Hertz paid $100,000 to each of the Bogarts, thereby exhausting its coverage. At that point, State Farm and Wausau assumed May's defense. State Farm filed a declaratory judgment action, seeking a declaration that it had no liability under its policy to May. State Farm then moved for summary judgment, to which Wausau responded and cross-moved for summary judgment. The trial court ruled that State Farm's policy provided excess coverage (over the amount already paid by Hertz) in the amount of $200,000. The court also ruled that Wausau's policy provided excess coverage (over the amount already paid by Hertz) in the amount of $500,000. The court, then finding that the two excess policies were conflicting, prorated the excess coverage, for any liability subsequently found at trial on the basis of two-sevenths to State Farm and five-sevenths to Wausau. The trial court also ruled that State Farm and Wausau were equally and jointly obligated to defend May in the Bogart action.[1] State Farm timely appealed the judgment.

The issue presented is clear-cut: whether State Farm's attempted "escape" clause insuring May's personally owned vehicle must be given effect so as to render the trial court's proration of liability improper. The applicable clause of the State Farm policy provides:

(b) The insurance with respect to:

    .    .    .    .    .

    iii. *a non-owned automobile,*

shall be excess over other insurance; however, NO COVERAGE SHALL APPLY TO ANY LIABILITY OR *LOSS* IF THE VEHICLE IS OWNED BY ANY *PERSON* OR ORGANIZATION ENGAGED IN THE *AUTOMOBILE BUSINESS* AND IF THE *INSURED* OR OWNER HAS OTHER INSURANCE APPLICABLE IN WHOLE OR IN PART TO SUCH LIABILITY OR *LOSS.* (Italics and capitalization in original).

The policy also defines the term "automobile business" as "the business or occupation of ... leasing ... land motor vehicles or trailers." Wausau's policy provides:

Other insurance. The insurance offered by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

    .    .    .    .    .

With respect to a *hired automobile,* or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the *insured.* (Emphasis in original).

Wausau's argument is that the language of the State Farm policy with regard to coverage of hired non-owned vehicles is ambiguous and it must therefore be read to cover hired vehicles. Wausau further argues that since its policy and the State Farm policy are in conflict as to excess coverage, the court properly prorated liability in view of the respective policy limits. State Farm argues that the escape provision is unambiguous and as a matter of law precludes coverage under its policy. We agree with State Farm.

The interpretation of an insurance contract is a question of law to be determined independently by the reviewing court. *E.g., Continental Casualty Company v. Signal Insurance Company,* 119 Ariz.

---

1. Judgment in this action has been entered and the insurance companies have paid in accordance with the formula ordered by the trial court. The dispute before this court involves only the respective liability of the two insurance companies according to the terms of their policies.

234, 580 P.2d 372 (App.1978). A contract of insurance is to be treated like any other contract, and the intention of the parties as determined by the language employed in the policy must prevail. *Rodemich v. State Farm Mutual Automobile Insurance Co.*, 130 Ariz. 538, 637 P.2d 748 (App. 1981). If the language in the policy is unclear and can be reasonably construed in more than one sense, an ambiguity exists which will be construed most favorably to the insured. *E.g., Parks v. American Casualty Company of Reading, Pennsylvania*, 117 Ariz. 339, 572 P.2d 801 (1977).[2] However, if the provisions of the policy are not ambiguous, the court must construe them according to their plain and ordinary meaning. *E.g., Almagro v. Allstate Insurance Company*, 129 Ariz. 163, 629 P.2d 999, 25 A.L.R.4th 61 (App.1981).

As previously noted in *United Services Automobile Association v. Empire Fire and Marine Insurance Co.*, 134 Ariz. 64, 653 P.2d 712 (App.1982), a multitude of cases from many jurisdictions wrestle with the problems and conflicts created by the existence of concurrent insurance policies and so-called "other insurance" or "excess insurance" clauses. The case at hand specifically presents the collision of an "escape" clause with an "excess" clause where there is a third insurer who has conceded primary coverage.

An "escape" clause is one that provides for avoidance of liability when there is other valid insurance. *Chamberlin v. Smith*, 72 Cal.App.3d 835, 140 Cal.Rptr. 493, (1977). An "excess" clause is one that provides insurance only for losses exceeding all other insurance. *See* Annot., 12 A.L.R.4th 995 (1982). Some courts, presented with such conflicts where only two policies are involved, have upheld the escape clause. Others have placed primary liability on the escape clause insurer, and

still others have prorated the coverage between the escape clause insurer and the excess clause insurer. *See State Farm Mutual Automobile Insurance Co. v. United States Fidelity and Guaranty Co.*, 490 F.2d 407, 410 (4th Cir.1974); *see generally,* Annot., 46 A.L.R.2d 1159 (1954).

■ Our decision is based on the basic principle of law that in interpreting insurance contracts, the intention of the parties should control. *United Services Automobile Association v. Empire Fire and Marine Insurance Co.*, 134 Ariz. 64, 653 P.2d 712 (App.1982). Where two "other insurance" clauses truly conflict, they are to be disregarded and the loss apportioned between the insurers. *E.g., Harbor Insurance Co. v. United Services Automobile Association*, 114 Ariz. 58, 559 P.2d 178 (App.1976). In our view, the two policies here do not conflict; therefore, apportionment is inappropriate.

■ We believe that there is a logical order of the policies in this case. Of the three insurance policies, it is clear that the Hertz self-insurance was the primary coverage, a fact that the parties do not dispute. *See* A.R.S. § 28–324; *State Farm Mutual Automobile Insurance Co. v. Agency Rent-A-Car, Inc.*, 139 Ariz. 201, 677 P.2d 1309 (App.1983).

The second policy in the logical order of coverage is the Wausau policy. This policy was obviously issued for the express purpose of dealing with the coverage of Xerox employees while they were driving rented vehicles. The policy was amended by Endorsement Number 15 to include as persons insured:

> Any partner, executive officer or *employees* thereof, but with respect to a nonowned automobile only while such automobile is being used in the business

2. We recognize that our supreme court in *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984) discussed at length its concerns with blindly applying the principles enunciated in *Rodemich* and *Parks*. The *Darner* rationale, however, does not apply because no allegation is presented

that the insurance contracts before us were represented to cover anything other than what the unambiguous contract language provides. Also, the insurers have no contractual relationship with each other. We need only identify what each policy was intended to cover and reconcile any conflict in their respective coverages.

of the named insured.... (Amended portion italicized).

Endorsement Number 16 provided that the term "hired automobile" in the policy:

> Shall be deemed to include any automobile hired in his own name by an employee of the named insured in the course of his employment by the named insured.

■ By contrast, the State Farm policy merely provided "drive other cars" coverage as an incident to May's policy on his personal vehicle. While the State Farm policy declared itself an excess carrier generally as to non-owned auto liability if there were other insurance, it specifically and in bold print excluded coverage for hired vehicles where other insurance was applicable. To treat the Wausau and State Farm policies as providing coextensive excess coverage would be to ignore "what the policies were intended to accomplish." *United Services Automobile Association v. Empire Fire and Marine Insurance Co.*, 134 Ariz. at 66, 653 P.2d at 714.

Our logic is fully supported by *United Services Automobile Association v. Empire Fire and Marine Insurance Co.*, 134 Ariz. 64, 653 P.2d 712 (App.1982). There, Richards was driving a car owned by Anderson. The Anderson car was primarily insured by Security Mutual Casualty Co., with excess umbrella coverage by Empire. Richards carried non-owned car coverage with United Services Auto Association (USAA). The USAA policy contained an excess insurance clause. This court found that "USAA was in a better position to evaluate its risk than would be a purely excess carrier." 134 Ariz. at 66, 653 P.2d at 714. We found of particular consequence that "[u]nder no set of circumstances can Empire's coverage ever be primary insurance" and held that USAA was required to bear the entire excess liability without proration. 134 Ariz. at 66, 653 P.2d at 714. We thus found an order of

the policies to carry out the intent of the parties.

An opinion very persuasive on the present issue is *Eipp v. State Farm Mutual Automobile Insurance Co.*, 429 F.Supp. 675 (D.Nev.1976). An employee of Motorola was driving a Hertz vehicle. Hertz was insured by Royal Globe Insurance Company. Motorola's policy with Zurich Insurance Company covered the driver, as an additional insured, and his personal automobile insurance was with State Farm. The State Farm policy contained a clause [3] almost identical to the one in this case. The court noted that for the escape clause to be operative (1) the insured must operate an automobile owned by someone in an automobile business and (2) other insurance must be available in whole or in part to the holder of the policy or the owner of the vehicle. State Farm argued that the exclusion was effective because the insured drove a vehicle owned by Hertz and other insurance was applicable. The court concluded that the escape clause was valid and excluded any coverage by State Farm. The court had no difficulty in finding that Hertz was in the automobile business. As to the second prerequisite, the court reasoned:

> Thus, it seems that the clear import of the language in the State Farm policy is to exclude coverage if there is either primary or excess insurance available to either the holder of the policy or the owner of the vehicle. It is undisputed that Royal Globe, as Hertz's insurer, provided the primary coverage in the amount of $100,000, an amount greatly in excess of the required amount under the Financial Responsibility Laws. This primary coverage in itself should be sufficient to invoke the exclusionary clause. In addition, however, there was an excess insurance policy available through

---

**3.** (b) The insurance with respect to

    (i) *a temporary substitute automobile,*
    (ii) *a trailer,* or
    (iii) *a non-owned automobile,*

owned by any *person* or organization engaged in the *automobile business,* SHALL NOT AP-PLY TO ANY LIABILITY OR LOSS AGAINST WHICH THE INSURED OR THE OWNER OF SUCH VEHICLE HAS OTHER COLLECTIBLE INSURANCE APPLICABLE THERETO, IN WHOLE OR IN PART. (Italics and capitalization in original). 429 F.Supp. at 677.

**158**

Zurich Insurance Company. It is undisputed that Zurich covered Motorola as named insured and Rickmers as additional insured with a policy limit up to $500,-000. As such, the Zurich policy provides an additional basis for concluding that the "other insurance" aspect of the exclusionary clause has been satisfied.

429 F.Supp. at 678.

Wausau argues that State Farm's policy is ambiguous because it gives the appearance of providing for non-owner coverage while later taking away such coverage. We do not believe the policy is ambiguous. The relevant clause does not purport to take away all the non-owned coverage. It merely makes such coverage "excess", as does the Wausau policy, if other insurance coverage applies. However, it goes one step further. As to one particular class of non-owned cars only, i.e., cars owned by an automobile business, it excludes coverage if there is other applicable coverage.

Further, we note that the law of Arizona does not require that an owner's policy provide "drive other cars" coverage. *See, e.g., Gilpin v. Northwestern Security Insurance Co.,* 447 F.2d 1347 (9th Cir.1971); *Heard v. Farmers Insurance Exchange Co.,* 17 Ariz.App. 193, 496 P.2d 619 (1972).

Wausau cites two Arizona cases, *Harbor Insurance Co. v. United Services Automobile Association,* 114 Ariz. 58, 559 P.2d 178 (App.1976) and *Arizona Joint Underwriting Plan v. Glacier General Assurance Co.,* 129 Ariz. 351, 631 P.2d 133 (App.1981), for the proposition that the clauses are repugnant, requiring proration of the coverage. Those cases are distinguishable. Both involved two similar and conflicting clauses. In *Harbor,* both clauses were excess clauses. In *Glacier,* both clauses were combination escape and excess clauses. Here, by contrast, Wausau's clause is an excess clause, while State Farm's clause is an escape clause.

In summary, the two policies here are reconcilable, not conflicting. The trial court erred by failing to give effect to State Farm's escape clause and by prorating coverage. By the terms of its policy

and under the facts of this case, State Farm has neither coverage nor a duty to defend.

For the foregoing reasons, the judgment is reversed and the matter remanded for proceedings consistent with this opinion.

EUBANK and KLEINSCHMIDT, JJ., concur.